ELIJAH PEELE *v.* HENRY WHITE, Ex'r of JESSE JESSOP, and others.

A agreed, in consideration of the use of his farm, to board B, his father-in-law; no time being fixed upon when such boarding was to cease, B continued to board with him until his, B's death. For several months preceding B's death, he was very ill, requiring constant nursing, day and night, so that A and his family were put to much trouble and expense. In an action by A against the administrator of B to recover for the extra trouble and expense consequent on B's helpless condition during his sickness, as upon a *quantum meruit: It was held,* 1. That the agreement must be taken to have been to board B from the date thereof, up to the time of his death;

2. That his Honor, on the trial in the court below, did not err in his charge to the jury, that if A did not intend, while the extra services were being rendered, to make a charge against B therefor, he could not afterwards do so.

(*Hauser* v. *Lane,* at this term, cited and approved.)

CIVIL ACTION, tried before *Eure, J*, at Fall Term, 1875, of PERQUIMANS Superior Court.

The suit was brought to recover the sum of $621.50, alleged to be due the plaintiff on account of services rendered the testator of the defendant White.

It was in evidence that the plaintiff married the testator's daughter, and that for nine years before the death of the testator, by agreement boarded him for the rent of his farm. The board was a fair price for the rent.

The testator devised his land to his daughter, the wife of the plaintiff. In November, 1873, the testator was attacked by paralysis, which rendered him as helpless as a child. He was so afflicted for seven months; requiring the constant attention of the plaintiff and his wife and family. During the seven months, the testator required nursing day and night, by two persons.

During these seven months neither the plaintiff or his wife undressed and went to bed, but spent every night in his room.

He required medicine at intervals of two hours during his entire illness. He had to be removed very often to change his position, which was always done or assisted in, by the plaintiff and his wife. To remove him required the aid of four persons.

It was shown by all the witnesses that the services rendered were worth the sum demanded.

During his illness the testator said to the plaintiff and his wife, that the gifts by his will would not pay him for their trouble in taking care of him in his sickness.

Visitors set up with the testator every night, for whom entertainment was provided by the plaintiff. A great many persons visited him during the day through his illness, and the plaintiff entertained them, and cared for their stock.

The plaintiff testified, that he had the purpose to charge for their services during the illness of the testator, but did not reduce it to writing until after his death.

The account does not include any charge for board during the illness of the testator.

The defendants requested the court to charge the jury : That the relationship between the parties repelled the implied obligation to pay, which would arise between strangers.

His Honor refused the instruction, and charged the jury that the relationship did not repel the presumption, but that near relationship was some evidence that such services were rendered gratuitously. That if the plaintiff did not intend to charge for the services while being rendered, he could not afterwards make the charge. The plaintiff excepted.

The jury returned the following verdict : " We believe from the relationship that the services rendered were presumptive gratuity ; and the plaintiff not entitled to recover."

The court rendered judgment against the plaintiff for costs upon the verdict, and thereupon the plaintiff appealed.

*Gilliam & Pruden,* for the appellant.
No counsel *contra,* in this court.

31.

PEARSON, C. J. The charge of his Honor is in conformity to the doctrine announced in *Hauser* v. *Sain,* at this term. If by reason of the relationship and the other circumstances, to wit : plaintiff and his wife, had the possession of the testator's farm on an agreement to furnish him with board for the use of the farm ; the testator by his will gives the land to his daughter, the wife of plaintiff; no time is fixed during which the plaintiff was to board the testator for the use of the farm. So we must take it that the agreement covered the whole time up to the death of the testator. They agreed to board him for " better or for worse " up to his death, and although for the last seven months the plaintiffs were subjected to heavy charges, we can see no principle upon which they can get rid of the special contract and fall back upon a *quit num n* .

The verdict is not very intelligible, but on the whole, we are satisfied the jury, although they may not have exactly comprehended the charge, mean to say that the plaintiff, while the services were being rendered, had no intention of making a charge for extra services and expenses.

No error.

PER CURIAM.                                                    Judgment affirmed.